654 So.2d 276 (1995)
FLORIDA POWER & LIGHT COMPANY, Appellant,
v.
PENN AMERICA INSURANCE COMPANY, Appellee.
Nos. 93-3468, 94-0131.
District Court of Appeal of Florida, Fourth District.
May 3, 1995.
*277 James R. Cole, Sellars, Supran, Cole & Marion, P.A., West Palm Beach, and Marjorie Gadarian Graham, Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for appellant.
John S. Freud, John S. Freud, P.A., Miami, for appellee.
GUNTHER, Judge.
Appellant, Florida Power & Light (FPL), appeals an order on cross-motions for summary judgment finding FPL not to be an "additional insured" under a policy of insurance issued by the appellee, Penn America Insurance Company (Penn America). Because we find the pertinent policy language to be ambiguous, we reverse.
The instant controversy emanates from an accident whereby Michael Haywood, an employee of Eastern Utility Construction, Inc. (Eastern), was seriously injured when he came into contact with an energized feeder bay conductor located at an FPL substation. Eastern was an independent contractor who had entered into a contract with FPL to renovate certain electrical substations. Pursuant to the contract with FPL, Eastern was required to procure and maintain insurance coverage for general liability, contractual liability, and products completed/operations liability in the minimum amount of $300,000 for each occurrence. Accordingly, sometime before commencing work, Eastern obtained a $500,000 comprehensive general liability insurance policy with Transamerica Insurance Company and a one million dollar excess policy with the appellee, Penn America. The Penn America policy provides that an "additional insured" is:
(a) any person, organization, trustee or estate to whom or to which the named insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities used by the Named Insured and then only to the extent of the "coverage required" by such contract and for the "limits of liability specified in such contract", but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy.
On the day of the accident, the entire Eastern crew, including Haywood, was working on an FPL substation in Boca Raton. Because of the public demands for electricity, FPL decided not to completely de-energize the aforementioned substation. While spray painting the end of a pipe, Haywood hit an energized "bus" with his head. As a result, Haywood was electrocuted thereby rendering him a quadriplegic.
Thereafter, Haywood sued FPL, and others, for personal injuries resulting from the accident. In his amended complaint, Haywood alleged that FPL, not Eastern, was negligent and that this negligence was the legal cause of his injuries. Eventually, Haywood's case against FPL settled for two million dollars and Transamerica, as previously agreed, tendered its policy limits of $500,000 to Haywood.
Subsequently, Penn America instituted the instant suit against FPL for declaratory relief seeking a determination that the insurance policy issued by Penn America to Eastern did not provide coverage to FPL. FPL, in turn, filed a counterclaim seeking a declaration that it was entitled to benefits under the policy. Both parties filed cross-motions for summary judgment and the trial court ultimately granted Penn America's motion finding that FPL was not covered under the insurance policy.
Under Florida law, a trial court must construe an insurance contract it its entirety, striving to give every provision meaning and effect. Associated Elec. & Gas Ins. Servs., Ltd. v. Houston Oil and Gas Co., 552 So.2d 1110 (Fla. 3d DCA 1989). To further this goal, the terms contained in an insurance contract must be given their plain, unambiguous and common meaning. Old Dominion *278 Ins. Co. v. Elysee, Inc., 601 So.2d 1243 (Fla. 1st DCA 1992). Thus, where contractual language is clear and unambiguous, there is not need for judicial construction and the contract must be enforced as written. Great Global Assur. Co. v. Shoemaker, 599 So.2d 1036 (Fla. 4th DCA 1992). However, where the terms employed in the contract are ambiguous, courts must strictly construe the agreement against the insurer and in favor of coverage. Sterling v. City of West Palm Beach, 595 So.2d 284 (Fla. 4th DCA 1992).
In the instant case, section (2)(a) of the "Persons or Entities Insured" provision provides as follows:
(2) Each of the following is an insured under this policy to the extent set forth below:
(a) any person, organization, trustee or estate to whom or to which the named insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities used by the Named Insured and then only to the extent of the "coverage required" by such contract and for the "limits of liability specified in such contract", but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy.
(emphasis added). Clearly, in the instant case, FPL was an organization to whom Eastern, the named insured, was obligated by virtue of a written contract to provide insurance such as was afforded under the instant policy. However, the policy does not define "operations by or on behalf of the Named Insured." Mirroring the language quoted above, then, the issue is narrowed to whether Haywood's underlying personal injury claim comes within the ambit of the definitional provision "but only with respect to operations by or on behalf of" Eastern.
Although no Florida cases have dealt with this precise language, cases from other jurisdictions are persuasive. In Casualty Ins. Co. v. Northbrook Property & Cas. Ins. Co., 150 Ill. App.3d 472, 103 Ill.Dec. 495, 501 N.E.2d 812 (1986), a subcontractor obtained a general liability policy from Casualty which named the general contractor as an additional insured. The policy provided that the general contractor was an additional insured "but only with respect to liability arising out of operations performed for the additional insured by the named insured." Id. 103 Ill. Dec. at 497, 501 N.E.2d at 814. The Illinois court held that the language employed in the policy required Casualty to defend and indemnify the general contractor because there was no specific reference in the endorsement necessitating that liability arise out of the fault of the subcontractor. Id. 103 Ill.Dec. at 498, 501 N.E.2d at 815. The court reasoned:
If Casualty had intended to limit its obligation to [general contractor] to those situations where the negligent acts or omissions of [subcontractor] had been established, it could have done so by using language similar to that found in Consolidation Coal [Co. v. Liberty Mutual Ins. Co., 406 F. Supp. 1292 (W.D.Pa. 1976)] [wherein the additional insured endorsement provided that Consolidation Coal was an additional insured, "but only with respect to acts or omissions of the named insured in connection with the named insured's operations at the applicable location designated"]. However, such language was not used. The language that was employed requires only that [general contractor's] liability arise out of operations of [subcontractor].
Id. 103 Ill.Dec. at 498, 501 N.E.2d at 815.
Similar language was also at issue in McIntosh v. Scottsdale Ins. Co., 992 F.2d 251 (10th Cir.1993). In McIntosh, the additional insured endorsement provided:
the "Person Insured" provision is amended to include as an insured the person or organization named below but only with respect to liability arising out of operations performed for such insured by or on behalf of the named insured.
Id. at 254. The district court, similar to the trial court below, interpreted this language to mean arising out of the negligence of the named insured, thereby excluding coverage for the additional insured's own negligence. On appeal, the tenth circuit reversed holding:

*279 At best, the phrase, "but only with respect to liability arising out of [named insured's] operations" is ambiguous as to whose negligence is covered and whose negligence is excluded from coverage. Because this ambiguous language purports to limit coverage, we must construe it narrowly. [citations omitted] ... Although the Kansas courts have not addressed the precise language before us, we believe that the Kansas courts, like courts in other jurisdictions that liberally construe ambiguous insurance policy provisions in favor of the insured, would conclude that the additional insured endorsement does not limit the policy's coverage to cases where [additional insured] is held vicariously liable for [named insured's] negligence... .
Id.
Finally, comparable language was analyzed in Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co., 721 F. Supp. 740 (E.D.Pa. 1989). In Philadelphia Elec. Co., the named insured, Davey Tree, was required to procure and maintain insurance prior to working for the Philadelphia Electric Company (PECO). The policy named PECO as an additional insured, "for any work performed by Davey Tree on their behalf." After an employee of Davey Tree sued PECO for negligence, the court concluded that the insurance policy should be read to include all liability arising in connection with Davey Tree's work, including the active negligence of PECO. Id. at 742. The court reasoned that if the parties had intended coverage to be limited to the vicarious liability type, such language clearly embodying that intention was available. Id.; see also Dayton Beach Park No. 1 Corp. v. National Union Fire Ins. Co., 175 A.D.2d 854, 573 N.Y.S.2d 700 (N.Y. App. Div.) (holding that phrase "arising out of operations performed by the named insured" covered additional insured for its own negligence), appeal denied, 78 N.Y.2d 864, 578 N.Y.S.2d 879, 586 N.E.2d 62 (1991).
In the instant case, the pertinent policy language merely reads "but only with respect to operations by or on behalf on the Named Insured," Eastern. No language in the provision requires fault on behalf of Eastern before FPL can be considered an additional insured. Thus, the language, similar to the language utilized in the cases discussed above, can only be considered ambiguous at best. The language that was employed by Penn America required only that FPL's liability arise out of the operations of Eastern. Obviously, Haywood's injuries and subsequent lawsuit arose out of some type of "operations" of Eastern as Haywood was an employee of Eastern working at the FPL substation. Therefore, because Penn America did not utilize specific language limiting coverage to the vicarious liability situation and because the language actually utilized is ambiguous at best, the "additional insured" provision must be construed against Eastern and in favor of FPL, the insured. Consequently, the trial court erred in entering a summary judgment in favor of Penn America determining that FPL was not an additional insured under the policy.
Accordingly, this case is reversed and remanded with directions to the trial court to enter a summary judgment in favor of FPL finding them an additional insured under the insurance policy. Thereafter, the trial court may hold further proceedings consistent with this opinion to resolve any additional issues raised by the parties regarding coverage.
REVERSED AND REMANDED.
POLEN and FARMER, JJ., concur.